[No. 56089–7.   En Banc.   December 7, 1989.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
EULALA SHUTE, ET AL, *Appellants,* v. CARNIVAL CRUISE
LINES, *Appellee.*

*Wall & Hinrichs* and *Gregory J. Wall,* for appellants.

*Bogle & Gates* and *Jonathan Rodriguez–Atkatz,* for appellee.

Smith, J.—A Washington resident, injured on a cruise ship in international waters off the coast of Mexico, brought suit against the cruise operator, a Panamanian corporation with its principal place of business in Florida, under the Washington "long–arm" statute, RCW 4.28.185. The United States Court of Appeals for the Ninth Circuit certified to this court the question whether personal jurisdiction over the cruise ship operator exists under the statute. Unless limited by the terms of the statute, our courts may assert jurisdiction over nonresident defendants to the extent permitted by federal due process. We therefore answer the certified question "yes."

The sole question presented by this case is whether a claim for negligent injury occurring on an ocean cruise ship in international waters can be said, within the meaning of our state's long–arm statute, to "arise from" advertisement and promotion in Washington of its cruises by a foreign corporation.

Appellee Carnival Cruise Lines, Inc. (Carnival), is a Panamanian corporation with its principal place of business in Florida. Appellants Eulala and Russel Shute are Washington residents who purchased ocean cruise fares from Carnival through a Snohomish County travel agency in March 1986.

The cruise ship, the M/V *Tropicale,* embarked from Los Angeles, California, on April 13, 1986, en route to Mexico. On April 15, 1986, during a guided tour of the ship's galley, Mrs. Eulala Shute slipped, fell, and was injured. The ship was in international waters off the coast of Mexico at the time. The Shutes filed this case as an action in Admiralty in the United States District Court for the Western District of Washington.

The trial court, the Honorable Carolyn R. Dimmick, by order dated June 25, 1987, granted summary judgment in favor of Carnival, dismissing the claim because the cause of action did not "arise out of" or "result from" the defendant's contacts with the state of Washington.

In its opinion, issued December 12, 1988, the United States Court of Appeals for the Ninth Circuit reversed the District Court. *Shute v. Carnival Cruise Lines,* 863 F.2d 1437 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989). Carnival moved for reconsideration. While that motion was pending, on February 6, 1989, the Washington Court of Appeals, Division One, issued its opinion in *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 767 P.2d 584 (1989), interpreting the Washington long–arm statute and finding no jurisdiction on facts comparable to those in the Shutes' case. The United States Court of Appeals then withdrew its opinion and, by order dated April 24, 1989, certified the following question to this court:

> Would the Washington long–arm statute establish personal jurisdiction over Carnival Cruise Lines for the claim asserted by the Shutes?

Carnival's only contacts with the state of Washington consist of advertisements in Washington newspapers, promotional materials provided to Washington travel agencies, and seminars conducted by Carnival's personnel for travel agencies in promotion of its cruises. Carnival maintains no office, owns no real estate in the state of Washington, and has no Washington business license.

The tickets issued by Carnival contained contract clauses designating Florida as the forum for any litigation. They were issued in Florida and forwarded to Washington. Carnival provided neither transportation nor services to the Shutes before they boarded the *Tropicale* in Los Angeles. There is no indication that the *Tropicale* nor any of Carnival's other vessels has ever called at a Washington port.

The United States Court of Appeals for the Ninth Circuit concluded in this case that although due process does not permit *general jurisdiction,* it does permit *specific jurisdiction. Shute v. Carnival Cruise Lines,* 863 F.2d 1437 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989).[1] Thus, the only inquiry remaining for this court is whether Washington's long–arm statute precludes jurisdiction on the facts of this case. *See Grange Ins. Ass'n v. State,* 110 Wn.2d 752, 756, 757 P.2d 933 (1988).

The "long–arm" statute, RCW 4.28.185(1)(a) provides in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
> (a) The transaction of any business within this state;

It is well established in Washington "that under the long–arm statute, RCW 4.28.185, our courts may assert

---

[1]Although an opinion which has been withdrawn has no precedential value, we agree with the reasoning of the United States Court of Appeals for the Ninth Circuit in *Shute.*

jurisdiction over nonresident individuals and foreign corporations to the extent permitted by the due process clause of the United States Constitution, except as limited by the terms of the statute." *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 711, 497 P.2d 1311, *cert. denied,* 409 U.S. 1009 (1972). We are thus asked to determine what limits are provided by the statute.

Our long–arm statute is patterned after the Illinois statute. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 109, 381 P.2d 245 (1963). The Illinois statute "reflects on the part of the legislature 'a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due–process clause.'" *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 109, 381 P.2d 245 (1963) (quoting *Nelson v. Miller,* 11 Ill. 2d 378, 389, 143 N.E.2d 673 (1957)). *See also* E. Cleary & A. Seder, *Extended Jurisdictional Bases for the Illinois Courts,* 50 Nw. U.L. Rev. 599 (1956). The same has been said of RCW 4.28.185. *See, e.g.,* Note, *In Personam Jurisdiction Expanded—Force and Effect of Service of Process Outside of State,* 34 Wash. L. Rev. 323, 326, 329 (1959). We interpret the statute relying upon this conceptual foundation.

In order to subject nonresident defendants and foreign corporations to the *in personam* jurisdiction of this state under RCW 4.28.185(1)(a), the following factors must coincide:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 711, 497 P.2d 1311 (citing *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967) and *Tyee Constr. Co. v.*

*Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963)), *cert. denied,* 409 U.S. 1009 (1972). In *Werner v. Werner,* 84 Wn.2d 360, 365, 526 P.2d 370 (1974), the court noted that:

> These factors are, in part, a distillation of the due process standards announced in *International Shoe Co. v. Washington,* [326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945)], and refined in *Hanson v. Denckla,* [357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)]; *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957).

Thus, when the federal courts regard the due process standard and the statutory standard under RCW 4.28.185 as a single inquiry,[2] it is based upon a concept firmly rooted in our case law.

▆ The United States Court of Appeals for the Ninth Circuit concluded that Carnival's actions were more than sufficient to satisfy the requirements of due process. *Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1442 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989). Carnival's solicitation of business in this state was purposefully directed at Washington residents. We find this sufficient to constitute a "purposeful act" under the *first prong* of our statutory test.

▆ The federal appellate court also concluded that "jurisdiction over Carnival is reasonable in this case." *Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1446 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989). We agree. Given Carnival's efforts to exploit the Washington market, we cannot say that it would offend "traditional notions of fair play and justice" for Washington to assert jurisdiction. Thus, the *third prong* of our statutory test is satisfied.

As a result of the holdings by the trial and appellate courts in *Shute* and by our Court of Appeals in *Banton,*

---

[2]*E.g., Pedersen Fisheries, Inc. v. Pattie Indus., Inc.,* 563 F. Supp. 72, 74 (W.D. Wash. 1983); *Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1440 n.1 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989).

this case turns on the *second prong* of our statutory test— whether the Shutes' claim "arises from" Carnival's promotional efforts in Washington within the meaning of RCW 4.28.185.

Our statutory test, first announced in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963), was adapted from a law review case note. *See Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115 n.1, 381 P.2d 245 (1963). In considering whether a cause of action "arises from" a party's contacts with a forum state, the article anticipated that a "cause of action might come to fruition in another state, but because of activities of defendant in the forum state there would still be a 'substantial minimum contact.'" Note, *Jurisdiction Over Nonresident Corporations Based on a Single Act: A New Sole for International Shoe*, 47 Geo. L.J. 342, 351 (1958). The article later stated:

> From the standpoint of fairness it should make no difference where the cause of action matured, so long as it could not have arisen *but for the activities of the nonresident firm in the forum where it is ultimately sued.*

(Italics ours.) Note, *Jurisdiction Over Nonresident Corporations Based on a Single Act: A New Sole for International Shoe*, 47 Geo. L.J. 342, 355 (1958).

The United States Court of Appeals for the Ninth Circuit adopted essentially this same "but for" analysis for the "arising from" prong of its test to determine whether the exercise of specific jurisdiction comports with due process. *Shute v. Carnival Cruise Lines*, 863 F.2d 1437, 1444 (9th Cir. 1988), *withdrawn*, 872 F.2d 930 (1989).

The "but for" test has been criticized. *See, e.g., Dirks v. Carnival Cruise Lines*, 642 F. Supp. 971, 975 (D. Kan. 1986); *Russo v. Sea World of Fla., Inc.*, 709 F. Supp. 39, 42 (D.R.I. 1989). However, any criticism that the "test" reaches too far is answered by the federal court's tempering of its "but for" test with an additional consideration. "If the connection between the defendant's forum related activities [and the claim] is 'too attenuated,' the exercise of

jurisdiction would be unreasonable". *Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1445 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989).

While other tests or rules have been suggested, we do not consider them appropriate for adoption by this court. *See, e.g., Dirks v. Carnival Cruise Lines,* 642 F. Supp. 971 (D. Kan. 1986) (contact must attach duty alleged to be breached); *Marino v. Hyatt Corp.,* 793 F.2d 427, 430 (1st Cir. 1986) (contact must be a material element of proof of claim); *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 767 P.2d 584 (1989) (contact must be a proximate cause of the injury).

Relying on *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 767 P.2d 584 (1989), Carnival argues that the "but for" test extends jurisdiction too far. The United States Court of Appeals for the Ninth Circuit withdrew its opinion in this case after *Banton* interpreted RCW 4.28-.185(1)(a). *Banton,* on facts comparable to the present case, denied jurisdiction under RCW 4.28.185(1)(a) because the claim did not "arise from" the defendant's contacts with Washington. We therefore examine that decision.

The *Banton* court first noted that this State has little case law interpreting the "arising from" portion of the long–arm statute. *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 413, 767 P.2d 584 (1989). After observing that "[n]one of [the Washington] cases determine whether a suit for personal injuries suffered outside the forum against a foreign corporation 'arises from' that corporation's promotion and consummation of business transactions within the State", the court then looked to cases from other jurisdictions.

Among the cases relied upon by the court in *Banton* to "provide persuasive authority that Banton's cause of action does not arise from Opry's contacts in Washington", were *Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir. 1986) and *Pearrow v. National Life & Accident Ins. Co.,* 703 F.2d 1067 (8th Cir. 1983). *See Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 413, 767 P.2d 584 (1989). Both courts

found no jurisdiction on facts comparable to those in this case. However, those cases employed a "proximate cause" analysis in determining whether a claim arises from forum contacts. *See Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1444 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989). Their reasoning was specifically rejected by the United States Court of Appeals for the Ninth Circuit.

Although the 1988 *Shute* opinion was available to the Washington Court of Appeals before it published *Banton* in February 1989, the briefs do not indicate that *Shute* was brought to the attention of the court. We thus conclude that Division One did not consider the *Shute* opinion when it decided *Banton* and that the result arguably would have been different if it had considered the then existing precedent from the Court of Appeals for the Ninth Circuit.

Carnival contends that the "great weight of authority" disfavors jurisdiction on comparable facts.[3] However, the authorities it cited are not controlling. We find them unpersuasive. We also note that other courts have asserted jurisdiction under circumstances similar to this case.[4]

The federal circuits are divided on whether jurisdiction will lie under the circumstances present in this case. We cannot reconcile the division. We conclude that Washington's long–arm statute extends jurisdiction to the limit of federal due process. The United States Court of Appeals for the Ninth Circuit has determined that federal due process permits specific jurisdiction in this case. We will not

---

[3]*See, e.g., Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir. 1986); *King v. Carnival Cruise Lines,* No. 82–7291 (W.D. La. Mar. 9, 1984) (Westlaw, Allfeds database); *Alexander v. Carnival Tours, Inc.,* No. 86–A–1951 (D. Colo. Dec. 11, 1986) (Westlaw, Allfeds database); *Dirks v. Carnival Cruise Lines,* 642 F. Supp. 971 (D. Kan. 1986); *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317 (2d Cir. 1964); *Pearrow v. National Life & Accident Ins. Co.,* 703 F.2d 1067 (8th Cir. 1983).

[4]*See, e.g., Walker v. Carnival Cruise Lines, Inc.,* 681 F. Supp. 470 (N.D. Ill. 1987); *Everett v. Carnival Cruise Lines,* 677 F. Supp. 269 (M.D. Pa. 1987); *Wilkinson v. Carnival Cruise Lines, Inc.,* 645 F. Supp. 318 (S.D. Tex. 1985).

deny Washington plaintiffs the benefit of that determination.

 We adopt the "but for" test of *Shute v. Carnival Cruise Lines,* 863 F.2d 1437 (9th Cir. 1988), *withdrawn,* 872 F.2d 930 (1989), and hold that there is sufficient connection between the Shutes' claim and Carnival's Washington contacts to support long–arm jurisdiction under RCW 4.28.185. "But for" Carnival's "transaction of any business within this state," Mrs. Eulala Shute would not have been injured on respondent's cruise ship. Therefore her claim "arises from" Carnival's Washington contacts within the meaning of Washington's long–arm statute.

We answer "yes" to the question certified to us in this case by the United States Court of Appeals for the Ninth Circuit.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and DURHAM, JJ., and PEARSON, J. Pro Tem., concur.