[No. 11925-4-III.   Division Three.   April 9, 1992.]

NORTHWEST LAND AND INVESTMENT, INC., ET AL,
*Respondents*, v. NEW WEST FEDERAL
SAVINGS AND LOAN ASSOCIATION,
ET AL, *Appellants.*

*William R. Hickman, Robert D. Johns,* and *Reed McClure,* for appellants.

*Douglas R. Shepherd* and *Shepherd, Abbott & Woodall,* for respondents.

SWEENEY, J. — American Savings and Loan Association (Old American), American Savings Bank F.A. (New American) and New West Federal Savings and Loan Association (New West) appeal from a judgment entered in favor of Northwest Land and Investment, Inc. (Northwest) following remand from the Court of Appeals, *Northwest Land & Inv., Inc. v. New West Fed. Sav. & Loan Ass'n,* 57 Wn. App. 32, 786 P.2d 324 (Division One appeal), *review denied,* 115 Wn.2d 1013 (1990). We affirm.

## Factual Background

This case involves a dispute over two construction loan agreements between Northwest and Old American.[1] Northwest sued Old American for breach of contract and violations of the Consumer Protection Act (CPA); Old American counterclaimed for collection of its notes and foreclosure. A jury awarded Northwest $505,169 and found that Old American had violated the CPA. Following the verdict, Old American's motion for entry of a judgment of foreclosure was granted. The properties were sold pursuant to the judgment of foreclosure. The trial court then entered a net judgment in favor of Old American for $6,570,556, an amount representing the principal and interest due on both of the Northwest loans, less Northwest's jury award, attorney fees and $10,000 CPA damages. Northwest appealed (Division One appeal). Old American cross-appealed the CPA award.

While the appeal was pending, the Federal Home Loan Bank Board declared Old American insolvent. On September 5, 1988, the Federal Savings and Loan Insurance Company (FSLIC) was appointed receiver for Old American. The FSLIC assigned Old American's assets to American Federal. American Federal was a "bridge" bank, which is an interim entity used to continue the business of a failed savings and loan. American Federal substituted for Old American in the appeal on November 22, 1988. RAP 3.2(a).[2] Thereafter, American Federal was placed in receivership and its assets and liabilities were transferred to two newly chartered federal savings and loan associations, New West and New American. Included in the assets and liabilities transferred

---

[1] We use the designations employed by the parties to identify the various entities:

| American Savings & Loan Ass'n | = | Old American |
| American Savings, a federal savings & loan | = | American Federal |
| American Savings Bank F.A. | = | New American |

[2] RAP 3.2(a) states:

"The appellate court will substitute parties to a review when it appears . . . the subject matter of the review has been transferred."

to New West were the Northwest loans and foreclosed properties. No assets and liabilities associated with the litigation were transferred to New American. On June 21, 1989, New West was substituted for American Federal in the Division One appeal. On September 18, New West filed its reply brief.

On February 20, 1990, Division One reversed the deficiency judgment against Northwest, holding the judgment inconsistent with the jury's finding of liability against Old American for breach of the loan agreements. It remanded for entry of a judgment in favor of Northwest ($505,169 plus interest, costs, and fees). *Northwest Land & Inv., Inc. v. New West Fed. Sav. & Loan Ass'n, supra* at 46. New West's motion for reconsideration in Division One and petition for review to the Supreme Court were denied.

On October 15, 1990, following remand from Division One, Northwest moved in the trial court to add New West and New American as additional party defendants; neither objected and the motion was granted.[3] At the October 15 hearing, Northwest also moved for entry of judgment against Old American, New West, and New American jointly and severally. Again, counsel, appearing for all three, did not object. The trial court granted the motion and entered judgment against Old American, New West, and New American for $1.34 million.[4]

On October 25, 1990, New West and New American moved for a new trial or relief from judgment, pursuant to CR 59(a) and CR 60(b), asserting that as assignees of the

---

[3]CR 25(c), entitled "Transfer of Interest", provides in part:

"In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

[4]The $1.34 million judgment included (1) $505,169 (plus interest of $219,561) for breach of the written construction loan agreements, (2) $10,000 (plus interest of $3,827) in the CPA claim, (3) $124,745 (plus interest of $47,738) for attorney fees and costs, (4) $249,253 (plus interest of $70,222) for receiver rents, and (5) $112,009 for attorney fees and costs on appeal, and expenses.

FSLIC they were not liable for damages based on oral agreements or punitive damages (CPA award). They relied on *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676 (1942). Pursuant to CR 60(a) and CR 60(b)(1) and (4), New American moved for an order deleting its name from the judgment, claiming it was added by clerical mistake and had no liability in, or relationship to, the action. The court denied both motions. New American, New West and Old American filed a supersedeas bond. This appeal follows.[5]

## ISSUES

1. Whether New West, New American and Old American are entitled to assert, and have timely raised, federal statutory and common law defenses to damage claims based on oral agreements? *D'Oench, Duhme & Co. v. FDIC, supra*; 12 U.S.C. § 1823(e).

2. Whether the judgment against New American should be vacated because of mistake or clerical error?

3. Whether the judgment against Old American should be vacated or, in the alternative, whether the supersedeas bond should be modified to delete Old American?

## STANDARD OF REVIEW

■ ■ Motions to vacate or for relief of judgment are addressed to the sound discretion of the trial court and will not be disturbed absent a showing of manifest abuse of discretion. *In re Marriage of Tang*, 57 Wn. App. 648, 653, 789 P.2d 118 (1990); *Wilson v. Henkle*, 45 Wn. App. 162, 166, 724 P.2d 1069 (1986). An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Ebsary v. Pioneer Human Servs.*, 59 Wn. App. 218, 225, 796 P.2d 769 (1990). Appeal from a denial of a CR 60(b) motion is limited to the propriety of the denial. *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179, 70 A.L.R.4th 1021 (1985).

---

[5]The notice of appeal was filed with the Supreme Court on November 16, 1990. On September 3, 1991, the Supreme Court transferred the matter to Division One of the Court of Appeals. The appeal was transferred to Division Three on October 7, 1991.

FEDERAL DEFENSES

Old American, New West and New American assert that the *D'Oench* defense applies because Old American made several oral representations to Northwest which either modified or supplemented written loan agreements. Specifically, they point to a promise by Old American to provide below-market take-out financing. They contend they are not liable if the judgment includes damages arising from an oral agreement. Additionally, Old American, New West and New American claim immunity from the CPA award under federal law because the award is punitive in nature. *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240 (6th Cir. 1989).

The *D'Oench* doctrine bars a borrower from asserting, against the FSLIC or its assignees, any claim or defense based on any unrecorded agreement which alters the terms of a seemingly unqualified obligation to pay. *D'Oench, Duhme & Co. v. FDIC, supra*; 12 U.S.C. § 1823(e).

In *D'Oench*, a bank customer executed a demand note to a bank which orally promised not to collect. The bank was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) succeeded in interest. When the FDIC attempted to collect on the note, the customer asserted the bank's oral agreement as a defense. The court ruled the unrecorded agreement could not be asserted against the FDIC because "federal policy . . . protect[s] [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *D'Oench*, 315 U.S. at 457.

The doctrine established in *D'Oench* has been codified in 12 U.S.C. § 1823(e) and expanded beyond the facts of *D'Oench*. An oral contract cannot be enforced against the FSLIC, FDIC or its assignees even though the regulatory agency knows of the agreement before taking control. Such contracts cannot be enforced even when a bank fraudulently induces a customer with oral misrepresentations, or when a customer is completely innocent. *Langley v. FDIC*, 484 U.S. 86, 98 L. Ed. 2d 340, 108 S. Ct. 396 (1987);

*Baumann v. Savers Fed. Sav. & Loan Assoc.*, 934 F.2d 1506, 1515 (11th Cir. 1991), *cert. denied*, ___ S. Ct. ___ (1992); *FSLIC v. Cribbs*, 918 F.2d 557 (5th Cir. 1990); *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.), *cert. denied*, 498 U.S. 895, 112 L. Ed. 2d 203, 111 S. Ct. 244 (1990). The *D'Oench* doctrine provides assurances that when a failed banking institution is taken over, authorities may rely on bank records and "seemingly unqualified notes . . . are [not] in fact subject to undisclosed conditions." *Langley*, 484 U.S. at 92; *FSLIC v. Two Rivers Assocs., Inc.*, 880 F.2d 1267, 1274-75 (11th Cir. 1989).

*D'Oench*, however, is an affirmative defense and accordingly may be waived if not timely raised. *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 422, 635 P.2d 153 (1981); *Allis-Chalmers Corp. v. Sygitowicz*, 18 Wn. App. 658, 660-61, 571 P.2d 224 (1977); CR 8(c).

### WAIVER — FEDERAL DEFENSES

New West and New American first raised the *D'Oench* defense in a motion for postjudgment relief on October 25, 1990, more than 2 years after the FSLIC was appointed receiver for Old American. New West and New American contend they could only properly raise the *D'Oench* defense by postjudgment motion. They argue the defense would not have been properly raised during the Division One appeal because the appeal was from a judgment *in favor of* Old American. Only after the deficiency judgment was reversed, and judgment was entered against them, did it make sense to assert the *D'Oench* defense. We disagree.

Application of *D'Oench* would have increased the deficiency judgment in favor of New West and New American by reducing Northwest's judgment, which offset part of the deficiency judgment. New West was aware that if Northwest prevailed on appeal, the deficiency judgment in favor of New West would be vacated and judgment would be entered in favor of Northwest. Asserting the *D'Oench* defense after Old

American's insolvency, while the case was on appeal, would have put Northwest on notice of the defense within a reasonable time after the defense became available.

■ The *D'Oench* defense may be raised for the first time on appeal, when the appeal is the "first stage of the proceedings at which [the assignee] is able to do so." *Baumann*, at 1514; *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266 (5th Cir. 1989).

■ Here, New West and New American had several opportunities prior to entry of judgment to raise the *D'Oench* defense: (1) in the Division One appeal; (2) in the March 12, 1990, motion for reconsideration in the Division One appeal, (3) in its petition for review to the Supreme Court on May 23, 1990, or (4) when the matter was remanded to the trial court for entry of judgment following the Division One appeal. Significantly, their attorney consented to the entry of judgment. Absent fraud, the actions of an attorney authorized to appear are binding on the client at law and in equity. *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). Moreover, Old American's cross appeal was timely; therefore, New West, as its successor, could have requested "affirmative relief by modifying the decision which [was] the subject matter of the review . . .". RAP 2.4(a). New West could have argued in the Division One appeal that federal law prohibits the imposition of punitive damages (the CPA award) on a successor of a failed savings and loan. It did not.

New West and New American contend they brought the *D'Oench* defense to the trial court's attention at the October 15 hearing. We disagree. At the hearing, the same counsel representing Old American, New West, and New American stated: "[Northwest's] next step is to jump off the bridge into the federal morass in trying to deal with the FIRREA [Financial Institutions Reform, Recovery, and Enforcement Act of 1989] procedures for *collection* on this . . .". (Italics ours.) The colloquy between counsel and the trial judge refers to federal defenses to *collection* of the Northwest judgment rather than defenses to *liability*.

The trial court did not abuse its discretion in denying motions by New West and New American for postjudgment relief.

## DISMISSAL OF NEW AMERICAN

New American asserts it should not be a party because it was not an assignee of any of Old American's assets or liabilities. It contends it was added by mistake.

CR 60(b) provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

Again, the standard of review is abuse of discretion.

On October 15, 1990, Northwest moved to add New American as a party pursuant to CR 25(c). Counsel represented to the court that he was "directed to appear" on behalf of American Savings Bank F.A. (New American) and that New American had no objection to the judgment running against it. Counsel stated:

> It really doesn't matter. . . .
>
> . . . .
> The Court of Appeals substituted New West as the defendant at the appellate level. We made a motion to substitute them at the trial court. [Counsel for Northwest] objected at the time so the Order was not entered here. He's now recognizing that the only defendant he's got at this level is a paper tiger and decided to bring in the real party and I don't have a problem with that.
> . . . .
> THE COURT: And you represent American Savings Bank F.A.?
> [Counsel]: We were directed to appear on their behalf.
> THE COURT: And you have no objection to the judgment running against it?
> [Counsel]: That's correct.

New American cannot now complain the court was misled, confused or mistaken as to the "party" intended to be sub-

stituted. *Haller v. Wallis, supra* at 547. The trial court did not abuse its discretion.

### VACATION OF JUDGMENT AGAINST OLD AMERICAN

Finally, Old American contends the judgment against it should be vacated and further that it is not properly named on the supersedeas bond, because it was dismissed and was never again joined as a party. Therefore, it argues, the court lacks jurisdiction.

■ Old American appeared, in open court, through counsel at the October 15, 1990, hearing and consented to the entry of judgment. In so doing, it vested the court with personal jurisdiction. *Haller,* at 547. It then filed a bond to supersede that judgment. The court did not abuse its discretion when it denied Old American's motion for relief. Old American is bound by its consent. Old American will not be deleted from the supersedeas bond.

### ATTORNEY FEES AND COSTS ON APPEAL

Northwest requests an award of attorney fees and costs on appeal. When an agreement provides for the payment of attorney fees to one party, a prevailing party is entitled to reasonable fees and costs, including fees incurred at trial and on appeal. *Granite Equip. Leasing Corp. v. Hutton,* 84 Wn.2d 320, 327, 525 P.2d 223, 72 A.L.R.3d 1172 (1974); RCW 4.84.330. Northwest is the prevailing party on appeal and is therefore entitled to its attorney fees and costs.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.

Review denied at 120 Wn.2d 1002 (1992).